609 So.2d 701 (1992)
STATE of Florida, Appellant,
v.
Kevin REAVES, Joe Chandler, and Adrienne Anderson, Appellees.
No. 92-0809.
District Court of Appeal of Florida, Fourth District.
December 2, 1992.
Rehearing Denied January 5, 1993.
*702 Robert A. Butterworth, Atty. Gen., Tallahassee, and Joan Fowler, Senior Asst. Atty. Gen., West Palm Beach, and Carolyn V. McCann, Special Asst. Atty. Gen., Fort Lauderdale, for appellant.
Ken Lange of Law Offices of Ken Lange, Bay Harbor Islands, for appellees.
ANSTEAD, Judge.
This is an appeal from a judgment dismissing first degree murder charges against the three appellees based upon a violation of the speedy trial rule. We reverse.

FACTS
On June 20, 1990, Adrienne Anderson, Kevin Reaves, and Joe Chandler were indicted by a grand jury on first degree murder charges. All three defendants later agreed to be jointly represented by the same attorney, Ken Lange. During the course of the proceedings the defendants requested trial continuances six (6) times, the last being on November 12, 1991, when defense counsel requested a defense continuance because his wife had suffered a miscarriage. At the November 12 hearing, trial was rescheduled for March 2, 1992.
Two weeks later, on November 27, 1991, defense counsel filed a "Demand Pursuant *703 to Rule 3.191(a)(2)." That rule permits a defendant, under certain conditions, to seek a trial within sixty (60) days. The body of the demand simply repeated the title and stated in toto that the demand was being filed. The certificate of service certified that a copy had been hand-delivered to "the State Attorney's Office."
Five days later, on December 2, 1991, a written status report was filed by defense counsel with the court which affirmatively asserted the defendants' readiness for the trial scheduled on March 2, 1992. The status report contained no reference to the defendants' "Demand Pursuant to Rule 3.191(a)(2)." However, the report listed eighteen (18) motions which defense counsel asserted he needed to prepare, file, and have heard before the trial scheduled for March 2. These motions were eventually set for hearing by defendants on February 27, 1992,[1] a date outside of the speedy trial period provided in rule 3.191(a)(2). The certificate of service on the status report certified that a copy thereof had been mailed to Assistant State Attorney Jeff Marcus, the attorney representing the state in the case.
On January 17, 1992, defense counsel filed a document entitled "Demand Pursuant to Rule 3.191(a)(2)(4) & (i)." The body of this motion again merely repeated the title. This time, the certificate of service certified that a copy had been hand-delivered to the state attorney's office. This demand, and the November 27th demand, are the only two documents in the record that counsel filed in the case that fail to refer to the particular prosecutor by name in the certificate of service. It appears from the record that this was not accidental. At the hearing on these demands, counsel stated that this conduct was intentional, including the titling of the demands by rule number only, and was calculated to not make it "horribly obvious I was filing the motion."
Finally, a document entitled "MOTION FOR FINAL DISCHARGE AS TO ALL THREE DEFENDANTS/VIOLATIONS OF SPEEDY TRIAL UPON DEMAND," was filed by defense counsel on February 4, 1992. The certificate of service stated that a copy of the motion had been mailed to Assistant State Attorney Jeff Marcus. As indicated, this motion was titled in all capital letters and the body of the motion *704 contained a detailed recitation of the circumstances allegedly entitling the defendants to discharge. Paragraph 2 of this motion stated:
On November 26, 1991, the undersigned mailed for filing a written Status Report, pages 1-2. In this status letter, the undersigned informed the Court and State that all defendants were ready for trial, that all discovery and depositions had been completed and what remained was the filing and hearings on some 18 defense motions. (Actually, 19 defense motions, as one not listed in this Status Report is a motion for Brady disclosure as to exculpatory evidence in the State's possession regarding lead Detective Steven Wiley and any investigation into Detective Wiley's conduct/misconduct in the Joseph Viscido, Jr. murder case, Judge Barry Goldstein).
The motion asserted that the defendants were entitled to discharge because the clerk of the court never "calendared the matters for hearing and/or trial as is required under the rules."
On February 6, 1992, the state filed a "Motion to Strike Defendants' Demands for Speedy Trial, Demands for Discharge, and Motions for Final Discharge," asserting that: (1) neither demand, of November 27th or January 17th, was received; (2) the demands were improperly prepared in that the captions did not apprise the reader of the substance of the demand, and the use of "the State Attorney's Office" in the certificate of service was improper under the court's local rules, and (3) the demands were filed in bad faith.
The next day, February 7, 1992, the trial court held a hearing on defendants' motion for discharge and the state's motion to strike. At the hearing, defense counsel stated that both demands were delivered to the main reception desk in the state attorney's office. The state presented sworn testimony of several employees, including that of Jeff Marcus, that no one at that office had seen either the November 27th or the January 17th demand. Marcus testified that, until February 4th, 1992, he had no knowledge of either demand because he had not received them and they were not in the state attorney's file. Subsequently, on February 14, 1992, the trial court granted the motion for speedy trial discharge, essentially holding that the defendants had complied with all of the technical provisions of the rules in seeking a speedy trial and a discharge when such trial was not forthcoming.

LAW AND ANALYSIS
Under the Florida Constitution, an accused has a right to a speedy trial. Article I. Section 16, Florida Constitution. Florida Rule of Criminal Procedure 3.191 spells out the procedures for ensuring this right. This rule allows the defendant to demand a trial within 60 days by "filing with the court having jurisdiction and serving upon the state attorney a Demand for Speedy Trial." Fla.R.Crim.P. 3.191(a)(2). If the defendant is not tried within the prescribed time, and he has been otherwise available for trial, he may file and properly serve a motion for discharge. Fla. R.Crim.P. 3.191(d)(1); (i)(2).
Rule 3.191(d)(3) provides:
Delay and Continuances; Effect on Motion.
If trial of the accused does not commence within the periods of time established by this Rule, a pending motion for discharge shall be granted by the court unless it is shown that (i) a time extension has been ordered under (d)(2) and that extension has not expired, or (ii) the failure to hold trial is attributable to the accused, a co-defendant in the same trial, or their counsel, or (iii) the accused was unavailable for trial under section (e), or (iv) the demand referred to in section (c) is invalid. If the court finds that discharge is not appropriate for reasons under (d)(3)(ii), (iii), or (iv), the pending motion for discharge shall be denied provided however, trial shall be scheduled and commenced within 90 days of a written or recorded order of denial.
(Emphasis supplied). In addition, rule 3.191(c), provides, in pertinent part:
No demand for speedy trial shall be filed or served unless the accused has a bona *705 fide desire to obtain a trial sooner than otherwise might be provided. A demand for speedy trial shall be deemed a pleading by the accused that he is available for trial, has diligently investigated his case, and that he is prepared or will be prepared for trial within 5 days.
The test used to determine whether the accused has complied with these provisions is an objective one. See State v. Kaufman, 421 So.2d 776 (Fla. 5th DCA 1982).
In Jones v. State, 449 So.2d 253 (Fla.), cert. denied, 469 U.S. 893, 105 S.Ct. 269, 83 L.Ed.2d 205 (1984), the defendant had filed seventeen written pro se motions, a memorandum of law covering a wide variety of subjects, and a request for discovery, all in the two weeks just prior to his filing a speedy trial demand. The Florida Supreme Court held that it was "patently clear from the record that defendant was not prepared for trial on [the date he filed his speedy trial demand], and could not be prepared within five days. The demand for speedy trial was spurious." Id. at 262; see also State ex rel. Ranalli v. Johnson, 277 So.2d 24 (Fla. 1973) (by filing motion to dismiss alleging insufficient information to prepare a defense two weeks after demand, defendant admitted his demand was spurious, because it indicated he was, or would be, prepared for trial); Darby v. State, 463 So.2d 496 (Fla. 1st DCA 1985), approved, 482 So.2d 1368 (Fla. 1986) (a defendant who files in bad faith a demand when he obviously is not prepared to go to trial within the period provided in rule 3.191(a)(2) is not entitled to rely on the lesser period in which to be tried).
On the other hand, in State v. Embry, 322 So.2d 515 (Fla. 1975), the supreme court held that a demand should not have been treated as spurious for the sole reason that the accused filed a motion to suppress after filing his demand. The court found no error in striking the demand, however, based upon the trial court's action in subsequently scheduling a hearing on the motion to suppress and setting trial just outside the speedy trial time. The court held that the trial court had effectively extended the speedy trial time to take care of pretrial motions as authorized by rule 3.191(d)(2).
Hence, it cannot be said that the mere filing of a motion by the defendant will always defeat a request for a speedy trial. Whether such matters require pretrial action in order to prepare a defendant for trial, and can be resolved so that a speedy trial can be conducted, must be determined on an individual basis.

THIS CASE
Here, the state contends that the motion for discharge should have been denied for at least two (2) reasons. First, it appears that the defense was not ready for trial since the defense itself took the position that some eighteen (18) important motions needed to be resolved prior to any trial; and second, it does not appear that the defense had a bona fide desire for an earlier trial since defense counsel admitted that he intentionally acted to deflect the attention of the court and the state from his demands.

READINESS FOR TRIAL
Defense counsel filed his demand on November 27, 1991, triggering the sixty day speedy trial period. However, on December 2, 1991, he filed his status report,[2] in which he stated that it would be "unrealistic" to believe that he could even file his eighteen motions by the end of December, much less allow time for responses by the state and hearings to resolve the motions. The eighteen motions included: Three (3) motions to exclude witnesses; three (3) motions to suppress statements; three (3) motions for severence under Bruton; two (2) motions in limine (regarding photograph and revolver); two (2) motions for Brady information; one (1) motion to produce arrest and conviction histories; and one (1) motion to suppress items removed from defendants' home. See note 1.
*706 Based on the defense representation as to the status of trial preparation contained in the written status report, we conclude that the trial court abused its discretion in finding that the defense was ready for an earlier trial. The eighteen motions had not even been filed at the time the sixty day period expired, and a hearing date on those motions was secured by the defense outside of the time for trial sought in the speedy trial demand. From this it is clear that the defense could hardly have been prepared for trial when the demand was filed, if the representation was genuine that all of these motions still needed to be resolved. Rule 3.191(c) requires a defendant to be ready for trial at the time the demand is filed or within 5 days thereafter, not at some unspecified time in the future.
The actions taken in this case are akin to those our supreme court characterized as "spurious" in Jones, and are a far cry from those in Embry where the defendant filed a single motion to suppress, and even there the speedy trial time was extended to resolve the motion. In contrast, there were numerous motions listed here, concerning discovery and other matters, that would ordinarily affect trial preparation. For example, there were separate motions for trial severance to be filed by the defendants. The record is silent as to whether each defendant, by the speedy trial demand, was seeking a separate speedy trial or a joint speedy trial. If separate trials were required, when would they be scheduled if the defendants were to continue to be represented by the same lawyer? Obviously, these issues and many of the other issues raised in the 18 motions would have to be resolved prior to trial. That is the factual position taken by counsel in the status report. We do not believe he can have it both ways.
The trial court, rather than evaluating the issue of whether these motions affected the defendants' readiness for trial, speculated as to the ultimate filing and resolution of the motions. For example, the trial court speculated that the motions for severance would probably have been denied. Under the rule, however, that is not the issue. The issue is whether the motions would affect the defendants' readiness for trial. We believe it is patently obvious that they would.
The trial court also noted that in reality none of the motions had been filed, and, in the event they were actually filed and required additional time for resolution, that the speedy trial time could have been extended as in Embry. Again, we conclude that this misses the mark, since it was the defendants' counsel who represented in writing, and we assume in good faith, that these motions would be filed and needed to be resolved before trial. And it was defense counsel who ultimately rescheduled the motions for hearing outside of the speedy trial time period, albeit before the date already scheduled for trial in early March.

COUNSEL'S BONA FIDE DESIRE FOR TRIAL
At the hearing on the motion to discharge, and later during oral argument before this court, defense counsel conceded that he had developed a strategy in seeking discharge under the speedy trial rule, of attempting to comply with the literal requirements of the rule, while also attempting to not make it "obvious" to the state or the court that he was actually seeking a speedy trial. In doing so, we believe counsel demonstrated not only that he did not have a bona fide desire for an earlier trial, but his conduct was substantially responsible for any delay in the trial and crossed the line for acceptable conduct in the courtroom.
Initially, counsel directly violated the trial court's directive that papers be served on the particular attorney representing the state. Next, defense counsel attempted to disguise the true nature of the documents filed with the court and the state by cryptically referring only to a rule number. Finally, counsel intentionally omitted any reference to his desire for an earlier trial in the status report filed with the court.

SERVICE ON THE STATE
Of the papers filed by the defense in this case, only the two demands at issue were *707 not served on the specific lawyer representing the state. On both, the certificate of service states that a copy of that pleading was "hand-delivered to the State Attorney's Office." The trial court had previously taken judicial notice of the practice by counsel of generically phrasing certifications of service. For example, service would often be made on the public defender's office or the office of the state attorney. In response to this practice, the trial court had adopted, prior to hearing this case, an internal rule of procedure which required that all papers be served on the specific lawyer representing the state or the defendant, and that the certificate of service so reflect.[3]
Defense counsel here acknowledged his own notice and usual practice of following the trial court's directive, but contended that he did not legally have to comply with such a local rule. The trial court agreed, and went on to hold that "such internal rules do not have the force of law." We disagree, and in the context of the issue before us, see no conflict between the rules and the court's practice, which effectuates the purpose of the rule to see that affected counsel actually receive proper notice of proceedings.
Rule 3.030(e) provides:
Certificate of Service. When any attorney shall in substance certify:
"I do certify that copy (copies) hereof have been furnished to (here insert name or names) by (delivery) (mail) this ___ day of ______, 19__.
____________________
Attorney"
the certificate shall be taken as prima facie proof of such service in compliance with all rules of court and law.
Rule 3.030(e) is silent as to whether service on an institutional office is sufficient. However, even considering that it is, and that the certification was "prima facie proof" of adequate service, we find the circumstances here to merit an exception.
Here, defense counsel conceded that he disobeyed the local rule to avoid making his motions "obvious" to the state. In other words, counsel had previously followed the court's order, and the state was entitled to expect compliance. This is a substantial factor that should have been considered by the trial court in determining whether defense counsel's desire for an earlier trial date was bona fide.
We stop short of overturning the trial court's factual finding that the papers were, in fact, delivered to the state attorney's office. Assuming delivery, the papers bearing the correct identification should have found their way into the proper file and to the assigned attorney. The trial court found that the state attorney's office was itself at fault to some degree concerning its internal procedures on the receipt, recording, and distribution of papers. We cannot interfere with this factual finding.

STYLE OF MOTIONS
On November 27, 1991, counsel for defendants filed a demand for speedy trial as a pleading entitled "Demand Pursuant to Rule 3.191(a)(2)" and, on January 17, 1992, filed another pleading entitled "Demand Pursuant to Rule 3.191(a)(2)(4) & (i)." Both documents stated no more than their titles.[4] The state contends that the demands filed herein are deficient in that they do not set forth the subject matter of the motion. More specifically, they contend that the capitalization and use of the words "Demand for Speedy Trial" in the *708 rule mandate the use of that phrase as the caption for a speedy trial demand.
Rule 3.191(a)(2), provides, in pertinent part:
Speedy Trial Upon Demand.
[E]very person charged with a crime ... shall have the right to demand a trial within 60 days, by filing with the court having jurisdiction and serving upon the state attorney a Demand for Speedy Trial.
Some support for the state's position can be found in the fact that the phrase "a Demand for Speedy Trial" was added when this section was amended in 1984. This phrase appears in the same manner in other provisions of the rule as well as the commentary thereto as amended in 1984. We do not believe the inclusion of this phrase in 1984 was by accident. Because of the unique nature and importance of the right involved, and considering that a defendant is forever discharged from the crime if the state and the court fail to follow these procedures, the use of this phrase was apparently intended to help insure that all interested parties receive unambiguous notice that the accused was seeking a speedy trial.
In Harris v. Tyson, 267 So.2d 390 (Fla. 4th DCA 1972), this court declared:
[T]he petitioner's "request" for a speedy trial embodied within a written instrument entitled "Notice of Intention to Plead Not Guilty" does not constitute a proper "demand" within the meaning, spirit and intention of Rule 3.191. The object of the "demand" is to put the State (prosecutor) on notice that the accused is seeking to be tried within the 60-day period... . If the State is to be held to a specific time period within which to bring an accused to trial then it is not unreasonable to require an accused to assert his right in such a manner as to properly put the State on notice of such assertion.
We do not suggest the imposition of an "inflexible" rule governing the form of demand... . [I]n the absence of such a definitive rule, we would impose a "rule of reason" and require that a "demand" for a speedy trial be made in such a manner as to clearly reflect notice to the state of the assertion of such right.
Id. at 393.
We also note that filing a demand by rule number alone may not apprise the clerk of the court, whose duty it is to notify the court of the demand and set a date for a calendar call, of the substance of that demand. Indeed, it appears that the demands here went unheeded by the clerk because of their titles. If the clerk cannot recognize the motion, then the trial court will not receive the notice Harris interpreted rule 3.191 to require. From this, one can conclude that defense counsel's use of only the rule number, especially in light of his concession that he did not want to make it "horribly obvious" that he was filing this demand, contravenes the intention of the rule drafters to secure notice to the state and the court.
Given the above, we conclude that the rule mandates the use of the phrase "Demand for Speedy Trial" in the captioning of that demand.

STATUS REPORT
We are also distressed that counsel would file a status report that represents to the court and opposing counsel that the case is on course for a March trial, at the same time that counsel is seeking an earlier trial date. Further, as noted above, no explanation was ever forthcoming as to why the motions referred to in the status report were never filed, and were rescheduled for hearing outside of the speedy trial time. Again, counsel has acknowledged that he prepared and served the status report and the demand for speedy trial at approximately the same time, and consciously omitted any reference to the demand for speedy trial in the status report. Obviously, a status report that omits any reference to a defendant's desire and written request for an earlier trial date is not presenting an accurate statement of the "status" of the case. Here, it is apparent that the omission was simply part of counsel's strategy to avoid bringing attention to the speedy trial demand in the hope that it *709 would be overlooked and the defendants would obtain a technical advantage. This action seriously undermines a claim that the defendants have a bona fide desire for an earlier trial.

CONCLUSION
Based on the above analysis, we hold that the defendants were not entitled to discharge under the provisions of rule 3.191(c), (d)(3)(ii), and (d)(3)(iv), Florida Rules of Criminal Procedure. This case presents a scenario contemplated by Judge Nimmons, when, on behalf of the First District, he rejected a similar claim:
Unfortunately, there are those defendants who, although having no interest in a trial on the merits, speedy or otherwise, would use the demand for speedy trial as a gimmick with the hope of creating confusion which might result in discharge or other favorable disposition short of trial. We must be vigilant to assure that this procedural right is not abused in that fashion.
Smith v. State, 444 So.2d 542, 546 (Fla. 1st DCA 1984).
The right to a speedy trial is an important right. Accused persons should not languish in jail or face unproven charges for an unreasonable length of time. When this right is exercised it should be squarely dealt with and enforced. However, a request pursuant to this right should be presented forthrightly and determined on its merits. In other words, as opposed to not making it "horribly obvious," the demand should be made loud and clear to both the court and the state. The right is demeaned, and indeed, in some cases endangered, by those who would seek to use it not as a way to secure a speedy trial, but, rather, as a means to avoid a fair and prompt trial on the merits. The 1984 amendments to Rule 3.191 were designed "to eliminate the kind of automatic speedy trial dismissal which occurred below." See State v. Howard, 599 So.2d 1043, 1045 (Fla. 2d DCA 1992), quoting State v. Veliz, 524 So.2d 1157 (Fla. 3d DCA 1988).
We are reluctant to single out counsel for criticism, especially in a criminal case where counsel's devotion to his client is absolutely essential to the proper operation of our criminal justice system. But there are bounds. One of those bounds is contained in the ancient oath of attorneys, adopted by Florida as the fundamental guide to lawyers privileged to assist others in the justice system:
I do solemnly swear:
I will support the Constitution of the United States and the Constitution of the State of Florida;
I will maintain the respect due to courts of justice and judicial officers;
I will not counsel or maintain any suit or proceedings which shall appear to me to be unjust, nor any defense except such as I believe to be honestly debatable under the law of the land;
I will employ for the purpose of maintaining the causes confided to me such means only as are consistent with truth and honor, and will never seek to mislead the judge or jury by any artifice or false statement of fact or law;
I will maintain the confidence and preserve inviolate the secrets of my clients, and will accept no compensation in connection with their business except from them or with their knowledge and approval;
I will abstain from all offensive personality and advance no fact prejudicial to the honor or reputation of a party or witness, unless required by the justice of the cause with which I am charged;
I will never reject, from any consideration personal to myself, the cause of the defenseless or oppressed, or delay anyone's cause for lucre or malice. So help me God.
(Emphasis supplied). It appears that both the words and the spirit of this oath were breached here.
We reverse and remand for further proceedings consistent herewith.
DELL, J., and WALDEN, JAMES H., Senior Judge, concur.
NOTES
[1] The motions were originally scheduled for hearing by defense counsel on January 9th, 1992. However, defense counsel stated in his status report that completing those motions by the end of December, 1991, the tentative filing schedule agreed to by the parties, would be "unrealistic." Accordingly, the report further stated that counsel would attempt to have the motions completed by the first week in January. By that time, however, counsel cancelled and reset them for January 30th. Subsequently, he cancelled and reset them again for February 27th. None of the eighteen motions mentioned in the report were ever actually filed in the case. The motions are listed as follows:

1. Motion To Exclude Witness At Trial (Greg Moore); 2. Motion To Exclude Witness At Trial (Juanita Richardson); 3. Motion To Exclude Witness At Trial (Aaron Johnson a/k/a Darryl Jones); 4. Motion in Limine re Photographs Taken From Defendants' Home; 5. Motion to Suppress Oral, Taped & Steno Statements of Adrienne Anderson; 6. Motion to Suppress Oral & Taped Statements of Kevin Reaves; 7. Motion to Suppress Oral & Taped Statements of Joe Chandler; 8. Motion by Adrienne Anderson for Severance from Kevin Reaves & Joe Chandler/Bruton; 9. Motion by Kevin Reaves for Severance from Adrienne Anderson & Joe Chandler/Bruton; 10. Motion by Joe Chandler for Severance from Adrienne Anderson & Kevin Reaves/Bruton; 11. Motion to Produce Arrest & Conviction Histories of State's victim Eddie West and Listed State's Witnesses Greg Moore; Michael Walker; Juanita Richardson; James Jackson; Aaron Johnson a/k/a Darryl Jones & , as to listed witnesses, all promises, rewards or incentives for their cooperation & testimony (including cash payments by police) per Brady, Giglio, & Napue; 12. Motion to Suppress all Items taken from Defendants' Home; 13. Motion in Limine re .38 revolver taken from defendant Anderson's purse/that gun stolen in Miami, 2/3/90; 14. Motion to Exclude All Witnesses Not Listed on Witness Lists Provided by State in Discovery; 15. Motion to Suppress Photo IDs & Any In-Court Identification Flowing from Photo IDs; 16. Motion for Brady Information/Initial Eyewitness Reports that the offenders' get-away vehicle was described to first officer Deputy Williams as a 1990 Saab 9000, White, with red horizontal stripes on lower half, with fog lights on front (not a car in any way connected to the defendants); 17. Motion for Brady Information/At time officers first confronted Kevin Reaves and Joe Chandler, they asked "Are you Jamacian?"; 18. Motion To Exclude Witness at Trial (Greg Simmons).
[2] The status report was apparently prepared and served by mail on November 26, 1991, the day before he filed his demand. November 28 and 29 were Thanksgiving holidays, November 30 and December 1 fell on a Saturday and Sunday.
[3] The court's rule stated:

Without exception, all pleadings filed in this division shall specify the precise name of the counsel of record to whom copies thereof have been mailed/delivered. Certifications of delivery/mailing to "the office of the state attorney" or "the office of the public defender" are specifically disapproved and are not acceptable in this division as evidence of compliance of any Florida Rule of Criminal Procedure of this particular division.
[4] For instance, the January 17 filing stated:

"Comes now Kevin Reaves, Joe Chandler & Adrienne Anderson, the defendants, through counsel, and files this Demand Pursuant to Rule 3.191(a)(2)(4) & (i)."