SORONDO, J.
In State v. Guzman, 697 So.2d 1263 (Fla. 3d DCA 1997), Chief Judge Schwartz, writing for the majority, said:
It seems that nothing we do or say, even in the harshest terms, has much effect on the speedy trial games people play in the Eleventh Circuit.
Id. at 1265, n. 1 (citation omitted). He went on to characterize these games as “Mickey Mousing.” We regret to say that Mickey is back.
On March 10, 2000, Juan Velazquez, defendant, was charged with battery on a law enforcement officer, resisting an officer with violence, depriving an officer of means of protection or communication, attempt to deprive an officer of means of protection or communication, unlawful possession of cannabis and tampering with or fabricating physical evidence. Defendant hired private counsel, Nelson T. Pena, who immediately began to prepare the case for trial.
On September 1, 2000, defendant filed a demand for speedy trial. On the same morning, the state announced a nolle pros of the case. In keeping with rule 3.191(b)(1), Florida Rules of Criminal Procedure, the case appeared on the court’s calendar on September 5, 2000. The prosecutor who had handled the case was no longer assigned to that division and was not present; neither was defense counsel. Upon calling the case, the trial judge was reminded that the case had been nolle prosed and he took the case off the calendar.
Thereafter, the state reconsidered its earlier decision to nolle pros and appointed a new prosecutor to review the file and consider refiling the charges. Concerned about possible speedy trial problems, the new prosecutor checked both the computerized court docketing system, Sieges, and the court file’s docket sheet. Neither one reflected the filing of a demand for speedy trial.[1]
Given these findings, and further determining that defendant asked for and was granted a continuance in June 2000, the state re-opened its investigation of the events that originally led to the filing of charges and ultimately refiled the case. Defendant was rearrested, arraigned on the new charges and the case was set for trial. On March 2, 2001, defendant filed a motion for discharge claiming that the speedy trial period provided by rule 3.191(b) had expired.
*428 The language of rule 3.191(g) specifically provides:
No demand for speedy trial shall be filed or served unless the accused has a bona fide desire to obtain a trial sooner than otherwise might be provided.
(Emphasis added). The state argued that defendant did not have a “bona fide desire to obtain a trial” at all, since he knew when he filed the demand that the case was to be nolle prosed a few minutes later.
After conducting an evidentiary hearing, wherein both prosecutors and defense counsel testified, the trial judge concluded that defendant was ready for trial on September 1, 2001, and that the state should have refiled the case within the speedy trial demand period. The judge found that the September 5th hearing should have put the state on notice that a demand had been filed.
The state never challenged the suggestion that defendant was ready for trial on September 1, 2000. Rather, it argued that defendant did not have a “bona fide desire to obtain a trial sooner than otherwise might have been provided.” We agree with the state and find that the record is unmistakably clear that defendant did not have the bona fide desire to go to trial required by the rule. A detailed review of events follows.
After filing his appearance, defense counsel began earnest discussions with the assigned prosecutor regarding the merits of the state’s case. His efforts were apparently effective as the prosecutor ultimately approached her superiors to seek permission to nolle pros the case.
During this time, counsel conducted discovery and filed pleadings. These pleadings were either mailed, hand-delivered or faxed directly to the prosecutor handling the case. At some point in time, defense counsel was told by the prosecutor that the case was being placed on the court’s calendar on Friday, September 1, 2000, for announcement of a nolle pros.
Knowing full well that the case was to be nolle prosed on the morning of September 1, 2000, an act that would obviate the need for a trial, defense counsel instructed his investigator to file a demand for speedy trial in the clerk’s office and at the state attorney’s office immediately before the court hearing was scheduled to be held. The demand was filed with the state at 9:09 a.m., and with the clerk at 9:21 a.m. Although counsel had always dealt with the assigned prosecutor, mailing or faxing pleadings to her directly, the certificate of service on the demand does not identify the prosecutor handling the case. It certifies service only to the “Office of the State Attorney,” and was served at the State Attorney’s general intake desk or office, thus insuring that it would be more difficult for the document to find its way to the prosecutor handling the case.[2]
Shortly after his investigator had filed defendant’s “stealth” pleading, defense counsel appeared in court to witness the announcement of the nolle pros. Immediately after the state’s announcement, he said:
Your Honor, I personally thank [the prosecutor] at 9:45, on today’s date, for all her efforts to seek the truth. Thank you.
(Emphasis added). The hypocrisy of this statement is perceptible only when viewed in the light of all the facts. What appears to be an innocuous reference to the time of day, was, in fact, defense counsel making *429 his record to establish that he had planted his “land mine” before the announcement of the nolle pros.
For several reasons, it is absolutely clear that counsel never intended to try this case and that the demand was not filed with a bona fide desire to accelerate the trial date. First, he knew when he filed the demand that the state was about to voluntarily dismiss the case and that no trial would be possible. Second, he could have spared himself the expense of hiring an investigator by filing the demand in open court immediately upon arriving in court that morning. This would have brought the matter to the judge’s personal attention and enhanced the likelihood of an accelerated trial date, had one been needed. Finally, by bringing the pleading to court, he would have delivered the pleading directly to the prosecutor thus advising her that he wanted to put an end to the case one way or another.
The failure to certify service to the assigned prosecutor in this case was not only unprofessional and discourteous, it evinces a specific intent to have the pleading fall through the cracks at the state attorney’s office.[3] By September 1st, counsel had been dealing with the prosecutor for more than five months. On all previous occasions defense counsel had provided copies of his pleadings directly to the assigned prosecutor. All indications are that the prosecutor, Liza Granoff, had behaved honorably. Indeed, in keeping with her obligation to seek justice, she had gone the extra mile in trying to do the right thing.[4] The very least one could have expected from defense counsel was adequate notice of filed pleadings to the prosecutor he knew to be responsible for the case. The filing of the demand for speedy trial in this manner does not evince a bona fide desire to get the case to trial. * '
In State v. Reaves, 609 So.2d 701 (Fla. 4th DCA 1993), the Fourth District Court of Appeal addressed a factual scenario similar to that in the present case. In Reaves, defense counsel filed a total of two “Demand[s] Pursuant to Rule 3.191(a)(2).” The text of these documents repeated the title and said nothing more than the obvious fact that the demand was being filed. As in the present ease, the certificates of service certified that a copy had been hand-delivered to “the State Attorney’s Office,” and were the only two documents in the record filed by the defense that did not identify the specific prosecutor assigned to the case.
During the hearing on the motion to discharge, counsel admitted that his purpose had been to “comply with the literal requirements of the rule, while also attempting to not make it ‘obvious’ to the state or the court that he was actually seeking a speedy trial.” Id. at 706. The court concluded that in doing so, counsel demonstrated that he did not have a bona fide desire for an earlier trial.[5] This conclusion is logical and consistent with the *430 intent of rule 3.191, which is to provide speedy trials and not speedy dismissals. Although defense counsel in the present case did not acknowledge his intent with the same candor as counsel in Reaves, it is clear that his purpose was identical.
In Reaves, then Judge, now Justice Harry Anstead, writing for a unanimous panel, concluded as follows:
The right to a speedy trial is an important right. Accused persons should not languish in jail or face unproven charges for an unreasonable length of time. When this right is exercised it should be squarely dealt with and enforced. However, a request pursuant to this right should be presented forthrightly and determined on its merits. In other words, as opposed to not making it “hoiribly obvious,” the demand should be made loud and clear to both the court and the state. The right is demeaned, and indeed, in some cases endangered, by those who would seek to use it not as a way to secure a speedy trial, but, rather, as a means to avoid a fair and prompt trial on the merits.
Id. at 709 (emphasis added).
We hold that although defendant may have been “prepared for trial” at the time he filed his demand for speedy trial, he did not have a “bona fide desire to obtain a trial sooner than otherwise might be provided.” Indeed, it is clear that the sole purpose for filing the demand was to sabotage any effort by the state to refile the charges. This is not the intent and purpose of rule 3.191(g).
Despite our repeated efforts to discourage the type of chicanery that took place in this case, the demand for speedy trial continues to be used as a tool to avoid exactly what it is supposed to accelerate-a trial on the merits. In an effort to curtail the practice exhibited in the present case, we respectfully urge the Florida Supreme Court to amend rule 3.191(b) as follows:
Except as otherwise provided by this rule, and subject to the limitations imposed under subdivisions (e) and (g), every person charged with a crime by indictment or information shall have the right to demand a trial within 60 days, by filing with the court a separate pleading entitled “Demand for Speedy Trial,” and serving a copy on the prosecuting attorney assigned to represent the state, and the presiding judge.
The additional language will serve to ensure that the true purpose of the rule will be achieved. It will require service on the individual prosecutor handling the case, thus putting the state on notice that the accused is prepared to go to trial within five days of the filing, and reduce the chances of such an important pleading falling through the cracks of an ever-growing bureaucracy. Serving the trial judge with a copy of the demand, in addition to the original filed in the clerk’s office, will significantly enhance the court’s awareness of the defendant’s desire to exercise his right to a speedy trial and personally notify the individual charged with protecting this right that the same is being invoked. Most importantly, the change will enhance the goal of the rule-to provide the accused who is prepared and has a bona fide desire to accelerate his trial date an opportunity to do so.
Reversed and remanded for trial.

. A printout of the computer records and the court file’s docket sheet are a part of this record.

. The last time we checked, the Miami-Dade County State Attorney's Office employed more than 250 lawyers.

. As concerns the filing of the original demand for speedy trial with the clerk’s office, we are both perplexed and concerned by the fact that the filing of the pleading is not reflected either in Sieges or on the court file’s docket sheet. No explanation was offered for this at the hearing.

. We are totally unfamiliar with the underlying facts of this case, as they are irrelevant to the resolution of the issue before us. Our comments on the behavior of counsel are not intended to express a view on the merits of the charges presently pending in the Circuit Court.

.We note that although the trial court in this case did not distinguish between the concept of "readiness for trial” and having a "bona fide desire to go to trial,” the Fourth District in Reaves did. We agree that the two concepts are different and both must be present.