666 So.2d 121 (1995)
John Austin LANDRY, Appellant,
v.
STATE of Florida, Appellee.
No. 81270.
Supreme Court of Florida.
September 12, 1995.
Rehearing Denied January 12, 1996.
*123 James Marion Moorman, Public Defender and A. Anne Owens, Assistant Public Defender, Tenth Judicial Circuit, Bartow, for appellant.
Robert A. Butterworth, Attorney General and Candace M. Sabella, Assistant Attorney General, Tampa, for appellee.
PER CURIAM.
John Austin Landry, a prisoner under sentence of death, appeals his convictions and sentences. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const.
On May 20, 1992, twenty-year-old John Austin Landry was charged with first-degree premeditated murder, first-degree felony murder and armed burglary. The charges resulted from Landry's alleged involvement in the armed burglary of a Glades County residence and murder of the homeowner. After a jury trial, Landry was found guilty as charged. The jury recommended, by a vote of seven to five, and the trial judge imposed the death penalty.[1]
Landry raises twelve claims in this appeal.[2] We need address only his speedy trial claims, which we find dispositive.
Landry was arrested on May 3, 1992 in connection with an armed burglary and murder that occurred in the early morning hours that same day. Counsel was appointed on May 5, 1992. On May 20, 1992, Landry was charged with first-degree premeditated murder, first-degree felony murder, and armed burglary. On May 22, 1992, defense counsel filed a demand for speedy trial pursuant to Florida Rule of Criminal Procedure 3.191(b).[3] By agreement of counsel, a hearing on the demand was held on June 22, 1992.
At the June 22 hearing, defense counsel represented that he had spent a number of hours with Mr. Landry, and he had spoken to Landry's family and to the codefendants' attorneys. He further explained that there was only one eyewitness and that counsel felt that the case was not complicated. Counsel also explained that he believed that he could not get any more information through discovery and that it was in his client's best interest to make the State go forward with its case as soon as possible.
The State did not file a motion to strike the demand, as provided in subdivision (g) of rule 3.191; nor did it object to the demand at the hearing. Rather, the prosecutor merely asked the court to inquire of Mr. Landry as to his understanding of the consequences of going forward without discovery in order to avoid a later claim of ineffective assistance of counsel. The judge then inquired of Landry, who appeared to understand and agree with counsel's decision to forego discovery in exchange for a speedy trial. It was also *124 brought out at the hearing during questioning of counsel for the codefendants that there were over 300 pages of discovery to review and lab results had not yet been received.
The trial court did not strike the demand as invalid under subdivision (g). Rather, the court "denied" the demand by written order dated June 25, 1992. The court based the denial on its determination that defense counsel was not ready for trial at that time because counsel had not reviewed the hundreds of pages of discovery, had not interviewed at least one eyewitness and had not taken any depositions. The trial court further expressed concern in its order of denial that "even with the examination of the defendant and the defense counsel, it is clear that this is so ripe for an ineffective counsel petition."[4]
Then on July 17, 1992, more than fifty days after the demand for speedy trial was filed, Landry filed his first motion for discharge, pursuant to subdivision (b)(4) of rule 3.191. In that motion, counsel alleged that a demand for speedy trial had been filed on May 22, Landry had been ready and available for trial since that time, and the State had not filed a motion to strike the demand. At the hearing on the motion for discharge, which was held the day the motion was filed, counsel asked that the court either grant the motion and set the case for trial within ten days or "make a ruling now as to the invalidation of [Landry's] demand."
The motion for discharge was denied by written order dated July 21, 1992. The court based the denial on the fact that it had previously denied Landry's demand for speedy trial based on a finding that Landry was not ready for trial and therefore "the time periods cannot run."
Trial was eventually set for September 30, 1992. However, on that date, defense counsel filed a second motion for discharge. A new judge had been appointed some time after the July 21 denial of the first motion for discharge. The newly appointed judge refused to consider the merits of the motion, concluding that he had to defer to the prior judge's rulings. After denying the September 30 motion, the new judge found on the record "for later attack based upon 3.850 as far as preparedness," that defense counsel "has made independent investigations and is prepared for trial." Also on September 30, defense counsel filed a petition for writ of prohibition with the Second District Court of Appeal, asking the court to prohibit the trial court from proceeding.
On October 1, 1992, the district court issued an order to show cause. On October 2, 1992, the State filed a motion to toll speedy trial with the trial court. That motion was granted by written order on October 14, 1992. On October 15, 1992, the district court denied the petition for writ of prohibition, without prejudice to the defendant's raising the issue on appeal. Landry's trial began on November 3, 1992.
Landry's first two claims, which deal with his speedy trial rights, are related. First, he contends that his convictions must be reversed because his May 22 demand for speedy trial was erroneously denied and he was not brought to trial within the time periods set forth in rule 3.191. In his second claim, Landry argues that the trial judges erred in their handling of his various motions for discharge, which should have been granted because the relevant time periods under rule 3.191 expired before he was brought to trial.
*125 Based on the unusual facts of this case, we find that Landry is entitled to relief. This unfortunate conclusion is mandated by the fact that the procedures set forth in rule 3.191 were virtually ignored in this case.
As noted above, Landry filed his demand for speedy trial under rule 3.191(b) on May 22, 1992. Although the State did not file a motion to strike or otherwise object[5] to Landry's demand as invalid under subdivision (g),[6] the trial court sua sponte "denied" the demand on June 25.
We have explained that the purpose of Florida's speedy trial rule is to
give the court control of its docket so that guilt or innocence may be determined in a manner consistent with the proper investigation and preparation of the case by the prosecution and, at the same time, guaranteeing to the defendant his constitutional right to a speedy trial.
State ex rel. Hanks v. Goodman, 253 So.2d 129, 130 (Fla. 1971). To this end, Florida Rule of Criminal Procedure 3.191 is designed to ensure that an accused cannot control the court's docket by filing spurious demands for a speedy trial for which the accused is not prepared. Id.; Jones v. State, 449 So.2d 253, 262 (Fla.), cert. denied, 469 U.S. 893, 105 S.Ct. 269, 83 L.Ed.2d 205 (1984).
However, our speedy trial rule makes no provision for the sua sponte denial of a demand for speedy trial. Once a demand is filed under subdivision (b), the court must hold a calendar call within five days. Fla. R.Crim.P. 3.191(b)(1).[7] At the calendar call, the court must set the case for trial to begin no less than five days and no more than forty-five days from the date of the calendar call, unless the demand is stricken as invalid on motion of the State under subdivision (g). Fla.R.Crim.P. 3.191(b)(2), (g).
A demand for speedy trial filed with the court and served on the State under subdivision (b) of rule 3.191 automatically triggers the provisions of that subdivision. A "demand for speedy trial" is not a "motion for speedy trial" that must be ruled on by the trial court at the calendar call. A sua sponte denial of a demand for speedy trial does not somehow stop the time periods set forth in subdivision (b) from running, as the trial judge in this case obviously believed. The only provisions that address the validity of a demand for speedy trial are subdivisions (g) and (j) of the rule.
Subdivision (g) provides in pertinent part:
No demand for speedy trial shall be filed or served unless the accused has a bona fide desire to obtain a trial sooner than otherwise might be provided. A demand for speedy trial shall be deemed a pleading that the accused is available for trial, has diligently investigated the case, and is prepared or will be prepared for trial within 5 days. A demand [for speedy trial] filed by an accused who has not diligently investigated the case or who is not timely prepared for trial shall be stricken as invalid on motion of the prosecuting attorney."
(Emphasis added). Obviously, as noted above, if the trial court strikes the demand under this provision, it need not set the case for trial as provided in subdivision (b)(2). (Subdivision (j) deals with the denial of a motion for discharge and will be discussed below.)
*126 If the defendant is not brought to trial within fifty days of filing the demand, the defendant can seek relief under subdivision (p) by filing a notice of expiration of speedy trial time (formerly referred to as a motion for discharge). Fla.R.Crim.P. 3.191(b)(4), (p)(2); see Fla.R.Crim.P. 3.191(i)(2) (1989) (pre-1993 version). Under subdivision (p)(3), the defendant is entitled to be brought to trial within ten days of the hearing on the notice, unless the trial court finds that one of the grounds for denial of a motion for discharge exists under subdivision (j). Fla. R.Crim.P. 3.191(p)(1), (3).
The grounds for denial set forth in subdivision (j) include: 1) a time extension has been ordered and has not expired; 2) the failure to hold trial is attributable to the accused, a codefendant in the same trial, or their counsel; 3) the accused was unavailable for trial; or 4) the demand for speedy trial is invalid. If the court finds one of the grounds for denial to exist, the motion for discharge should be denied and the trial must be commenced within ninety days of the order of denial. Fla.R.Crim.P. 3.191(j). If, however, none of the grounds for denial are found, the court must order that the defendant be brought to trial within ten days. Fla. R.Crim.P. 3.191(p)(3).
Subdivision (j)(4) of rule 3.191 provides the only vehicle for the trial court to consider the validity of a demand for speedy trial, absent a challenge by the State under subdivision (g). This provision serves as a safety valve to ensure that a defendant does not control the court's docket or obtain discharge by filing a spurious demand under subdivision (b). See Jones, 449 So.2d at 262 (trial court considered whether demand for speedy trial was valid after motion for discharge was filed); accord State ex rel. Hanks v. Goodman, 253 So.2d 129 (Fla. 1971) (defendant should not be discharged after expiration of speedy trial time based on demand until court determines that defendant had a bona fide desire to obtain speedy trial and accused or counsel has diligently investigated case and is prepared for trial; if these pre-requisites are not met demand should be stricken as invalid). Under subdivision (j), if the court finds that the demand is invalid, the court should strike the demand, deny the motion for discharge, and schedule the trial to begin within ninety days of the denial.
The trial court in this case clearly erred by sua sponte denying Landry's speedy trial demand. It appears from the record and order denying the demand that the trial court may have become confused by the State's concerns about a future ineffective assistance of counsel claim if defense counsel did not participate in discovery. In its June 25 order denying the demand, the court emphasized the fact that "even with the examination of the defendant and the defense counsel, it is clear that this is so ripe for an ineffective counsel petition." Rule 3.191 makes no provision for denying or striking as invalid a demand for speedy trial based on such concerns. As noted above, the only considerations for finding a demand invalid are set forth in subdivision (g) of the rule, which provides that the demand must be "bona fide" and may be stricken as invalid if the court determines that the accused "has not diligently investigated the case" or "is not timely prepared for trial."
Because the June 25 order denying Landry's demand for speedy trial was a nullity, the trial court further erred by not setting the case for trial in accordance with subdivision (b)(2). The trial thus should have begun no later than forty-five days from the June 22 calendar call.
Moreover, because the May 22 demand for speedy trial triggered the speedy trial periods provided in subdivision (b), when Landry had not been brought to trial within fifty days of the filing of his demand, he was entitled to seek relief under subdivision (p) by filing a motion for discharge (currently referred to as a notice of expiration of speedy trial time). Fla.R.Crim.P. 3.191(b)(4), (p)(2). As explained above, when the July 17 motion was considered, the trial court had two options: 1) to strike the demand as invalid and deny the motion in accordance with subdivision (j)(4)[8] or 2) to order Landry be brought to trial within ten *127 days. Fla.R.Crim.P. 3.191(p)(3). The trial court did neither. Rather, the court merely relied on its prior "denial of the demand" and concluded that in light of its prior finding that Landry was not ready for trial, "the time periods cannot run."
Because the trial court did not strike the demand as invalid in accordance with subdivision (j)(4), Landry was entitled to be brought to trial within ten days of the July 17 hearing. When he was not, he was entitled to discharge under subdivision (p)(3).
Even if the trial court's order denying the motion for discharge could be read as finding Landry's demand for speedy trial invalid under subdivision (j)(4), under the unique circumstances of this case there is no objective record support for that finding. It is clear from both the transcript of the June 22 hearing and the June 25 order that the trial court's primary reason for finding that Landry was not prepared for trial was the fact that Landry had chosen to forego discovery in a first-degree murder case and the court feared that the case was thus "ripe" for an ineffective assistance of counsel claim. As noted above, the potential for an ineffective assistance claim is not a basis for holding a demand for speedy trial invalid under subdivisions (g) or (j).
Likewise, the mere fact that a defendant charged with first-degree murder decides to forego discovery in exchange for a speedy trial cannot serve as an independent basis for striking a demand as invalid, because there is no requirement that a defendant participate in discovery. See Fla.Rule Crim.P. 3.220(a) (defendant may elect to participate in discovery); accord Martin v. State, 503 So.2d 994 (Fla. 1st DCA 1987) (demand for speedy trial is not per se invalid simply because defendant has not engaged in discovery). There is no question that there are legitimate strategic reasons why a defendant might wish to forego discovery in exchange for a speedy trial. For example, a defendant who believes that he has little to gain from discovery might choose to forego discovery in order to avoid having to disclose the names of defense witnesses or other information that a defendant who elects to participate in discovery must disclose to the State under Florida Rule of Criminal Procedure 3.220(d). Or, as in this case, a defendant might choose to forego discovery in exchange for a speedy trial in order to be brought to trial before the State can work out deals with codefendants[9] whose testimony might be the State's primary evidence against the defendant. Moreover, if a trial court is allowed to second-guess reasonable trial strategy and strike a demand for speedy trial simply because the defendant who filed the demand has been charged with first-degree murder and will have to forego discovery in exchange for a speedy trial, an accused charged with first-degree murder effectively would never be able to demand a speedy trial under rule 3.191(b).
Our ruling in this case should not be read as a blanket prohibition on striking a demand for speedy trial as invalid when the defense maintains that the demand was made for tactical reasons. Accord State v. Kaufman, 421 So.2d 776 (Fla. 5th DCA 1982) (demand invalid where demand for discovery was filed and depositions scheduled after defendant demanded speedy trial, even though defendant and his attorney maintained that demand was filed for tactical reasons and discovery was merely sought to avoid ineffective assistance claim). Rather, in determining whether a demand is valid under subdivisions (g) and (j) of rule 3.191, the court must consider whether the accused has a "bona fide desire" to obtain a speedy trial and whether the accused "has diligently investigated the case" and "is timely prepared for trial." See Goodman, 253 So.2d at 130. This determination is primarily an objective one that must be made from the record on a case-by-case basis. State v. Reaves, 609 So.2d 701, 705 (Fla. 4th DCA 1992), review *128 denied, 623 So.2d 494 (Fla. 1993); Kaufman, 421 So.2d 776, 777.
While the fact that trial counsel has made a tactical decision not to engage in discovery[10] may be considered in making this determination, that factor alone is not sufficient to render a demand for speedy trial invalid. This is because tactical decisions such as foregoing discovery in favor of a speedy trial are subjective in nature. If the court were to rely solely on the decision to forego discovery, the court would merely be substituting its judgment as to proper trial strategy for that of defense counsel.
The determination of whether a speedy trial demand is valid should not involve a subjective evaluation of trial strategy or mere second guessing by the trial court. The court must look to the record for objective evidence of whether the accused's demand for a speedy trial is valid. In objectively evaluating the validity of a speedy trial demand, the court must consider representations made by defense counsel or the accused on the record. The court must also look to the record for evidence of such things as motions filed by the defendant or ongoing investigation or trial preparation. The court must then determine whether the record activity or trial preparation reasonably affected the defendant's readiness for trial under subdivision (g). Accord Reaves, 609 So.2d 701 (defendant not prepared for trial where after filing demand defendant filed status report indicating defendant intended to file eighteen motions to be ruled on prior to trial and motions had not even been filed at time sixty-day period expired); Jones, 449 So.2d at 262 (defendant was not prepared for trial where seventeen defense motions were pending at time demand was filed); Kaufman, 421 So.2d 776 (defendant had not diligently investigated case and was not prepared for trial where demand for discovery was filed same day as demand and depositions were later scheduled). Where a defendant chooses to forego discovery, the court may consider whether, under the circumstances present in that case, the defendant could be reasonably prepared for trial without the benefit of discovery. However, if there is no objective evidence on the record to support that determination, the mere fact that the defendant has not engaged in discovery and the trial court believes the strategy is ill-advised cannot serve as the sole basis for striking the demand as invalid.
We reject the State's contention that because "death is different" the trial court should be allowed to use the provisions of rule 3.191 to second-guess trial strategy and consider effectiveness of counsel in cases such as this. Like any other defendant, a defendant who has been convicted of first-degree murder who believes his conviction is the result of ineffective assistance of counsel can seek relief after conviction by way of a rule 3.850 motion. Matters such as the reasonableness of trial strategy and the effectiveness of counsel are best addressed in such post-conviction proceedings.
In this case, defense counsel explained that he had spent several hours with his client and had spoken to Landry's family and to the codefendants' attorneys. There was only one eyewitness, other than the codefendants, and the case was not complicated. Counsel further told the court that he did not believe that he could get any more information through discovery and that it was in his client's best interest to make the State prove its case as soon as possible. It is clear from the record that Landry agreed with counsel.
After thoroughly reviewing the record, we agree with Landry that the trial court in this case abused its discretion by imposing its judgment on both the defendant and his attorney, and thereby denied Landry his right to a speedy trial under rule 3.191(b). The trial judge did not consider whether, under the circumstances of this case, Landry could be reasonably prepared for trial without discovery and there was nothing in the record to support a conclusion that he could not. As counsel represented, this was a relatively uncomplicated case, even though Landry had been charged with first-degree murder.
*129 It was Landry's position that he left the victim's home before the codefendants entered and shot the homeowner. Two of the three codefendants had given statements implicating Landry but they had not yet entered into plea agreements with the State or agreed to testify against Landry at the time the demand was filed. Moreover, this was not a case where extensive investigation into possible penalty phase mitigation was necessary.
The State points to the fact that after filing the speedy trial demand, defense counsel attended numerous depositions and examined a number of those witnesses. This activity cannot serve as evidence that Landry was not timely prepared for trial as required under subdivision (g). These depositions were not scheduled by Landry's attorney; they were scheduled by counsel for the codefendants. The depositions were taken between October 21 and October 28, 1992, long after Landry would have been brought to trial had his speedy trial demand been honored. Most significantly, there is nothing in the record to indicate that Landry intended to depose these witnesses at the time his demand was filed or at the time his July 17 motion for discharge was heard.
Because the trial court's finding that Landry was not prepared for trial is not supported by the record, the July 17 motion for discharge was erroneously denied. When Landry was not brought to trial within ten days after the July 17 hearing on the motion, discharge was mandated under rule 3.191(p)(3).
However, when Landry filed his second motion for discharge on September 30, the new judge refused to consider the merits of the motion, instead deferring to the prior judge's erroneous rulings. While we do not fault the new judge for deferring to the prior judge's rulings, it is interesting to note that on basically the same information concerning defense counsel's readiness for trial that was presented during the June 22 and July 17 hearings, the new judge found that defense counsel had made independent investigation and was prepared for trial as of September 30.
Accordingly, for the reasons stated above, we are required to reverse Landry's convictions, vacate his sentences, and remand for an order discharging Landry in accordance with Florida Rule of Criminal Procedure 3.191(p)(3).
It is so ordered.
GRIMES, C.J., and OVERTON, SHAW, KOGAN, HARDING and ANSTEAD, JJ., concur.
WELLS, J., concurs with an opinion, in which OVERTON, J., concurs.
WELLS, Justice, concurring.
I find I must concur that the majority's decision in this case is correct. I write to express my recognition that the result is abhorrent. There is a gross failure of the judicial system when a person convicted of murder does not have his conviction reviewed and finalized on substantive issues, but rather, that person must be discharged because our circuit court either did not understand or ignored a rule of criminal procedure. The responsibility for this failure must be borne by the trial court and counsel who represented the State. They are charged with the duty to know and apply the rules. The administration of justice is dependent upon the trial court and counsel for the State competently and faithfully fulfilling this duty.
Though not reached because of the error in respect to Florida Rule of Criminal Procedure 3.191, I am compelled to note another serious judicial misfeasance, as the trial judge failed to file a written sentencing order contemporaneously with the oral pronouncement of the death sentence. By 1992 when this trial occurred, this Court's decision in Grossman v. State, 525 So.2d 833 (Fla. 1988), cert. denied, 489 U.S. 1071, 109 S.Ct. 1354, 103 L.Ed.2d 822 (1989), and its progeny clearly established the requirement that trial judges prepare all written sentencing orders imposing a death sentence prior to the pronouncement of the sentence and file these orders concurrently with the pronouncement. However, this requirement also was either not known or ignored. The trial court and all counsel who failed to acknowledge any of *130 these case decisions in the record are responsible for this failure.
Judges and attorneys who lack an understanding or knowledge of rules of procedure or of a decision of this Court which had been rendered several years before the trial, or who ignore rules or decisions of this Court cause this type of severe failure in the judicial system. It is self-evident that this type of serious failure undermines the public's confidence in respect to all of our courts. I believe we should directly address such failures by sanctions through judicial and professional discipline.
The Code of Judicial Conduct and the Rules of Professional Conduct require competence and knowledge of the law by judges[11] and counsel,[12] and disclosure to the trial judge of legal authority even if adverse.[13] We should enforce these provisions. Canon 3 D of the Florida Code of Judicial Conduct and the amended comment adopted June 15, 1995,[14] could provide a method to engage the disciplinary process. See In re Code of Judicial Conduct, 656 So.2d 926 (Fla. 1995).
OVERTON, J., concurs.
NOTES
[1] Because the trial court failed to file a written sentencing order, as required by section 921.141(3), Florida Statutes (1991), it is unclear what aggravating and mitigating factors were found in this case.
[2] The claims are: 1) the trial court erred by denying his demand for speedy trial; 2) the trial court erred by denying his motions for discharge for speedy trial violation; 3) the trial court erred by excluding evidence suggesting the victim's wife had been involved in the murder; 4) the trial court erred by disallowing codefendant Young's testimony concerning his understanding of his sentence under the plea agreement; 5) the trial court erred by allowing the state to introduce taped statements of the two codefendants who testified at trial; 6) the trial court erred by allowing hearsay testimony; 7) the trial court erred by allowing the state to introduce perpetuated deposition testimony of the ballistics expert; 8) the trial court erred by denying the defense motion for judgment of acquittal as to premeditated murder; 9) the trial court should have merged Landry's premeditated murder conviction into his felony murder conviction for sentencing purposes; 10) Landry's death sentence must be reduced to life because the trial court did not file a written sentencing order; 11) death is not proportionately warranted here; and 12) Landry must be resentenced within the guidelines on the armed burglary because the trial court failed to enter contemporaneous written reasons for departure.
[3] Although the 1992 version of Florida Rule of Criminal Procedure 3.191 was applied at the trial level, the parties refer to the current version of the rule, which has since been renumbered. In re Amendments to the Florida Rules of Criminal Procedure, 606 So.2d 227 (Fla. 1992). Except for the fact that the reference to motion for discharge in former subdivision (i), now (p), has been changed to a notice of expiration of speedy trial time, the relevant portions of the rule remain substantially the same. Therefore, we too refer to the current version of the rule.
[4] The pertinent portions of the order read as follows:

It is apparent to the Court that the defense counsel is not ready for trial at this time. Particularly, it was indicated that there has been no review of several hundred pages of discovery, at least one eye witness, and perhaps other witnesses in this case. No depositions have been taken or has any other information been taken from the eye witness or other potential witnesses.
To say that the defense is ready to go to trial to create with the Court the following scenario: If speedy trial is granted and the defendant is acquitted, of course, he is home free; however, if the defendant is not acquitted, even with the examination of the defendant and the defense counsel, it is clear that this is so ripe for an ineffective counsel petition.
The potential penalties in this case are severe, with the possibility that the ultimate penalty [may] be involved. The idea that something might be pulled off and, that if it isn't, you would be bound by the consequences of such a severe penalty, is not within the rational thinking of this Court... .
[5] As noted above, the prosecutor merely asked the court to inquire of Landry as to his understanding of the consequences of going forward without discovery. The court inquired of Landry who appeared to have understood and agreed with defense counsel's strategy to force the State to prove its case against him as soon as possible.
[6] Florida Rule of Criminal Procedure 3.191(g) provides in pertinent part:

(g) Demand for Speedy Trial; Accused is Bound. A demand for speedy trial binds the accused and the state. No demand for speedy trial shall be filed or served unless the accused has a bona fide desire to obtain a trial sooner than otherwise might be provided. A demand for speedy trial shall be deemed a pleading that the accused is available for trial, has diligently investigated the case, and is prepared or will be prepared for trial within 5 days. A demand filed by an accused who has not diligently investigated the case or who is not timely prepared for trial shall be stricken as invalid on motion of the prosecuting attorney.
(Emphasis added).
[7] In this case, the calendar call was set for June 22 by agreement of counsel.
[8] The only possible reason for denial in this case was ground (j)(4)  that the demand was invalid.
[9] There were three codefendants in this case: twenty-year-old David Sorton; eighteen-year-old Ricky Young and seventeen-year-old Franklin Delph. Sorton and Young eventually entered into plea agreements with the State, wherein each pled guilty to second-degree murder and first-degree burglary and agreed to testify against Landry in exchange for twelve-and seventeen-year sentences, respectively. Delph, a juvenile, was given a forty-year sentence with a three-year minimum mandatory and credit for time served.
[10] In such cases, it is prudent for the trial court to inquire of the defendant to determine whether the defendant concurs in the strategy.
[11] Canon 3 B(2) of the Florida Code of Judicial Conduct states in pertinent part: "A judge shall be faithful to the law and maintain professional competence in it."
[12] Rule 4-1.1 of the Rules Regulating the Florida Bar states in pertinent part: "Competent representation requires the legal knowledge, skill, thoroughness, and preparation reasonably necessary for the representation."
[13] R. Regulating Fla. Bar 4-3.3.
[14] The amended comment reads as follows:

Appropriate action may include direct communication with the judge or lawyer who has committed the violation, other direct action if available, or reporting the violation to the appropriate authority or other agency. If the conduct is minor, the Canon allows a judge to address the problem solely by direct communication with the offender. A judge having knowledge, however, that another judge has committed a violation of this Code that raises a substantial question as to that other judge's fitness for office or has knowledge that a lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects, is required under this Canon to inform the appropriate authority. While worded differently, this Code provision has the identical purpose as the related Model Code provisions.