713 So.2d 988 (1998)
Hon. Warren BURK, Circuit Court Judge, etc., Petitioner,
v.
Shalonda WASHINGTON, Respondent.
No. 89829.
Supreme Court of Florida.
June 12, 1998.
*989 Robert A. Butterworth, Attorney General, and Anthony J. Hall and Wesley Heidt, Assistant Attorneys General, Daytona Beach, for Petitioner.
Blaise Trettis, Executive Assistant Public Defender, Viera, for Respondent.
ANSTEAD, Justice.
We have for review Washington v. Burk, 704 So.2d 540 (Fla. 5th DCA 1997), based upon direct and express conflict with Drost v. Drost, 519 So.2d 698 (Fla. 4th DCA 1988). We have jurisdiction. Art. V, § 3(b)(3), Fla. Const. For the reasons expressed below, we approve the result in Washington but hold that from this date forward the criminal speedy trial rule shall not apply to criminal contempt proceedings initiated by a court on its own motion.

MATERIAL FACTS[1]
On November 28, 1995, petitioner Shalonda Washington (Washington) was arrested for an alleged violation of section 741.31(4)(b), Florida Statutes (1995), a firstdegree misdemeanor,[2] for violating a courtordered injunction which barred her from visiting Amy Litchfield's workplace. Thereafter, the State obtained continuances at two docket soundings and subsequently failed to even file an information charging Washington. Washington's counsel filed a motion for discharge under the speedy trial rule in the county court on February 27, 1996, but the motion was rendered moot and the county court prosecution ended after the State filed a nolle prosequi in the case.
However, that was not to be the end of the matter. On March 11, 1996, the State reinitiated the criminal proceedings against Washington by a separate motion in the family division of the circuit court asking the court to direct Washington to show cause why she should not be held in criminal contempt of court. The motion was predicated on the same alleged violation of the injunction enjoining her from contact with Litchfield that had been the subject of the State's previous arrest of Washington. The circuit court granted the State's request and issued an order to show cause, thereby initiating criminal contempt proceedings against Washington based upon the same conduct for which she had previously been arrested. The court subsequently denied Washington's motion for discharge, which claimed that the speedy trial time period for the criminal contempt had commenced when she was arrested on November 28, 1995, and expired ninety days thereafter. The trial judge's denial of Washington's *990 motion for discharge was based on the decision in Mauney v. State, 507 So.2d 746 (Fla. 5th DCA 1987), which had held that the speedy trial rule[3] did not apply to indirect criminal contempt proceedings.
Subsequently, the district court, in a twoto-one decision, granted prohibition to Washington and barred her prosecution for criminal contempt. The court expressed concern that since criminal contempt prosecutions for protective injunction violations were commonly initiated by the State, not the court, a defendant's speedy trial rights would be subject to abuse if the State were permitted to renew the same charges against a defendant after failing to comply with the speedy trial rule in an initial prosecution. After recognizing the applicability of the rules of criminal procedure to contempt actions per Florida Rule of Criminal Procedure 3.010, the majority concluded that criminal contempt is subject to the limitations of the speedy trial rule. The court expressly receded from its earlier decision in Mauney in holding that the speedy trial rule applies to all indirect criminal contempts, "whether initiated by arrest or service of an order to show cause." 704 So.2d at 543.

LAW AND ANALYSIS
At the outset, we recognize that all criminal defendants are guaranteed a speedy trial by both the United States[4] and Florida[5] Constitutions. The existence of that constitutional right and its application is not an issue before us. Instead, this case confronts us with the question of whether our courtauthored speedy trial rule applies to indirect criminal contempt proceedings. Put another way, we must determine whether this Court, in adopting the speedy trial rule as a rule of Court, see In re Florida Rules of Criminal Procedure, 245 So.2d 33 (Fla.1971), contemplated that this rule be applied to indirect criminal contempt proceedings initiated and conducted by courts.

MAUNEY
In Mauney,[6] the defendant was the investigating officer in a vehicular manslaughter case who was served with a subpoena to appear for trial and was eventually found guilty of indirect criminal contempt of court for failure to appear. 507 So.2d at 747. On appeal, he argued that his conviction was barred by the speedy trial rule. The Fifth District concluded that the speedy trial rule was inapplicable:
Rule 3.840 sets out the procedure which a court must follow in prosecuting indirect criminal contempt matters. There is no cross-reference to the Speedy Trial Rule. Such cases commence with an order to show cause issued by the judge. A defendant is notified of a specified time and place for a hearing "with a reasonable time allowed for preparation of the defense after service of the order on the defendant." The judge may issue an order of arrest if it seems the defendant will not appear for the show cause hearing (Rule 3.840(a)(2)). But an arrest is not necessary, and as contemplated by the rule, would only occur in an unusual case.
The language of Speedy Trial Rule 3.191(a)(1) simply does not mesh with rule 3.840. Initially it states it applies to "every person charged with a crime by indictment or information." These are charging documents filed by the prosecution; not a judge. Secondly, the time periods established by the rule start running when a *991 person "is arrested" or served with a notice to appear "in lieu of physical arrest." As noted above, show cause orders in indirect criminal contempt matters are not generally coupled with an arrest, nor are they "in lieu" of a physical arrest.
We do not think that Florida's Speedy Trial Rule 3.191(a)(1) was intended to apply to proceedings under rule 3.840 or rule 3.830.
Id. at 748. As mentioned above, the district court majority opinion here receded from Mauney and concluded that indirect criminal contempt is a criminal proceeding, subject to the speedy trial rule, notwithstanding the type of charging document used or who initiates the proceedings. Washington, 704 So.2d at 543.

WASHINGTON
In addressing this case we perceive two (2) distinct issues: one, the application of the speedy trial rule to this particular case; and two, the broader question of the applicability of the rule to traditional court-initiated criminal contempt proceedings. The majority in the district court in Washington focused on the prevailing manner of enforcement and prosecution of domestic violence injunction violations. First, the majority noted Washington's contention that "[a]s in all prosecutions for indirect criminal contempt for violation of a protective injunction in Brevard County, the order to show cause in the petitioner's case was initiated, written, and submitted by the State of Floridanot by the court." 704 So.2d at 542. Second, the majority noted Washington's argument that pursuant to section 741.2091(1),[7] Florida Statutes (1995), each state attorney is required to assign prosecutors to specialize in domestic violence prosecutions. Id. Consequently, the court presumably accepted Washington's assertion that "`domestic violence' prosecutors now prosecute indirect criminal contempt in the circuit court." Id. The implementation of this statutory prosecutorial scheme for criminal domestic violence prosecutions by the State appears to have been a substantial factor in convincing the majority to recede from Mauney and to hold that the pending criminal contempt prosecution of Washington was subject to the speedy trial rule, "whether initiated by arrest or service of an order to show cause." Id. at 543.
In dissent, Judge Sharp disagreed with the majority's decision to recede from Mauney. Washington, 704 So.2d at 543-45. The dissent voiced four primary objections. First, she found no conflict with Mauney, since that case, unlike Washington, involved a criminal contempt proceeding initiated by the court and did not involve a prior arrest for a crime. Id. at 543. Second, Judge Sharp noted that as a practical matter, the courts handling family law cases will almost certainly have no systematic way of knowing whether the State has arrested or intends to prosecute someone for violation of the court's injunction. Id. at 544. Third, Judge Sharp noted that the procedural protections embodied in the speedy trial rule are usually not implicated in contempt proceedings since, in most cases, the defendant is not arrested and his or her freedom is not impacted as in a purely criminal case. Id. Finally, Judge Sharp believed application of the speedy trial rule to courtinitiated contempt proceedings will prove practically "unworkable, and ... will strip the civil courts once more of their inherent powers to enforce their orders in family law cases involving domestic violence." Id.
We conclude, as the majority did here, that under the particular circumstances of this case, and the present language of the rule, that Washington is entitled to discharge. However, we also agree with the dissent of Judge Sharp in her policy analysis, that the policy concerns underlying our enactment of the speedy trial rule are either not present in, or are less compelling in their application to traditional judicial contempt proceedings. Implicit in Judge Sharp's dissent and Mauney is the recognition that the concerns and policies underlying the enactment of the criminal speedy trial rule do not ordinarily apply to judicial contempt proceedings.

CRIMINAL CONTEMPT
The preamble to our Rules of Criminal Procedure, rule 3.010, unambiguously *992 provides: "These rules shall govern the procedure in all criminal proceedings in state courts including proceedings involving direct and indirect criminal contempt...." Similarly, the provisions in the Federal and Florida Constitutions guaranteeing the right of speedy trial respectively provide:
In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed...."
Amend. VI, U.S. Const.
In all criminal prosecutions the accused... shall have the right ... to have a speedy and public trial by impartial jury in the county where the crime was committed.
Art. I, § 16(a), Fla. Const. These constitutional and statutory provisions unambiguously apply to all criminal proceedings. When we consider the lack of ambiguity in these provisions together with the factual circumstances of this case, where the State, in effect, initiated both successive prosecutions, we believe the result reached by the majority below to be correct. In the absence of compelling evidence to the contrary, we are bound by the words we actually used in adopting the Rules of Criminal Procedure, and the words we used indicate that these rules, including the speedy trial rule, apply to criminal contempt proceedings. We are unable to determine whether we actually considered the issue of the application of the speedy trial rule to judicial contempt proceedings when we adopted the rule. That being the case, we must stand by the rules as written.
Florida courts have also consistently taken the position that fundamental rights, such as the right to a speedy trial, may not be avoided by the State choosing to proceed with a method of prosecution designed to circumvent those rights. See City of Fort Lauderdale v. Mattlin, 566 So.2d 1330, 1332 (Fla. 4th DCA (1990)) (holding that a "municipality may not deny an accused rights under the speedy trial rule, where the accused is formally charged with an act that is a crime under state law and is punishable by incarceration, simply by arbitrarily electing to charge him by ordinance"); Robinson v. Lasher, 368 So.2d 83 (Fla. 4th DCA 1979) (holding that where same circumstances gave rise to reckless driving and manslaughter charges, State could not enlarge speedy trial window by untimely filing of manslaughter charge or by nolle prosequi of reckless driving charge); State v. Thaddies, 364 So.2d 819 (Fla. 4th DCA 1978) (holding where unprosecuted municipal ordinance violation and aggravated battery charge were based on same criminal episode, discharge for latefiled battery charge was appropriate under speedy trial rule); see also In re Abolition of Municipal Courts Transition Rule 22, 339 So.2d 1119 (Fla.1976) (establishing speedy trial rule moratorium for municipal ordinance violations transferred to county court); Singletary v. State, 322 So.2d 551 (Fla.1975) (holding that accused has been "taken into custody" within meaning of speedy trial rule when served with summons to answer for alleged crime); cf. Mitchell v. State, 157 Fla. 121, 25 So.2d 73 (1946) (finding equal protection violation where State chose prosecution by method which deprived defendant of two-year statute of limitations for seconddegree murder while others guilty of same offense have benefit of limitations period because of different prosecutorial method).
In this respect we agree with the concerns of the Fifth District majority that the State should not be permitted to make an end run around the speedy trial rule by seeking an alternative method of prosecution. Trial courts, in particular, should be wary of permitting their contempt powers to be abused where the State has already had a fair opportunity to prosecute but has failed to comply with the speedy trial rule. Such abuses raise concerns not only related to speedy trial and double jeopardy, but also of fundamental fairness. In this case, Washington was actually arrested, and the State had a full and fair opportunity to timely prosecute her for her alleged misconduct in violating the domestic injunction. A court's inherent contempt powers were not intended to be invoked to remedy the State's mistakes.

POLICY
On the other hand, we are free to reevaluate our policy and determine anew *993 whether the speedy trial rule should henceforth be applied to traditional court-initiated criminal contempt proceedings. In this regard we find ourselves in substantial agreement with Judge Sharp's reasoning in her dissent:
To hold otherwise strips away the circuit court's powers to enforce and punish for violation of its injunctions and orders. The civil courts which issue injunctions and protective orders have no way of knowing whether an arrest had been made involving one of their orders, no way of requiring compliance with the time frames of the speedy trial rule, and no way of applying the `window' period embodied in the speedy trial rule to save cases from dismissal in the appropriate circumstances. Further, the courts may also have difficulty in applying the speedy trial rule to their own proceedings, since it is not clear when the speedy trial rule starts to run, nor is it clear how the `window' period would apply to those proceedings. In sum, subjecting the civil courts to the speedy trial rule triggered either by the state's prosecution or by their own show cause orders, will have the practical effect of curtailing their ability to exercise their inherent criminal contempt powers, for no compelling reason.
Washington, 704 So.2d at 544-45 (Sharp, J., dissenting). While we agree with the decision of the majority in this case, we find Judge Sharp's policy analysis compelling in terms of establishing our future policy.
We have held that the purpose of the speedy trial rule is to "give the court control of its docket so that guilt or innocence may be determined in a manner consistent with the proper investigation and preparation of the case by the prosecution and, at the same time, guaranteeing to the defendant his constitutional right to a speedy trial." Landry v. State, 666 So.2d 121, 125 (Fla.1995) (quoting State ex rel. Hanks v. Goodman, 253 So.2d 129, 130 (Fla.1971)). There is little doubt that the word "prosecution," as used by this Court in Landry, did not contemplate a court exercising its inherent authority to enforce its orders. See 666 So.2d at 125 (explaining that speedy trial rule gives court "control of its docket so that guilt or innocence may be determined in a manner consistent with the proper investigation ... of the case by the prosecution"). Rule 3.191(g) mandates that "[a] demand for speedy trial binds the accused and the state."
In fact, Florida Rule of Criminal Procedure 3.191(a), the speedy trial rule, unambiguously provides that "every person charged with a crime by indictment or information shall be brought to trial within 90 days if the crime charged is a misdemeanor or within 175 days if the crime charged is a felony." Rule 3.140(c)(2) just as clearly directs that:
All indictments or informations on which the defendant is to be tried shall expressly state that the prosecution is brought in the name of the State of Florida. Indictments shall state that the defendant is charged by the grand jury of the county. Informations shall state that the appropriate prosecuting attorney makes the charge.
Therefore, a show cause order issued to initiate indirect criminal contempt proceedings by judicial authority does not appear to be contemplated as an appropriate charging document within the meaning of the speedy trial rule as previously drafted.
In traditional criminal prosecutions, the state attorney has discretion in determining whether to prosecute an alleged offender under an explicit, but limited, statutory scheme defining criminal conduct. A court cannot order the State to prosecute a crime, Cleveland v. State, 417 So.2d 653, 654 (Fla. 1982) (recognizing that "state attorney has complete discretion in making the decision to charge and prosecute"); nor may it initiate habitual offender proceedings, Young v. State, 699 So.2d 624 (Fla.1997); or decide if the State can seek the death penalty. State v. Bloom, 497 So.2d 2 (Fla.1986). Our entire criminal justice system is built around this model.
However, in contempt proceedings, all courts, regardless of the nature of the proceedings as civil or criminal, have discretion[8] *994 without the sanction of the executive branch, in prosecuting or not prosecuting alleged contemnors for misconduct against the court. The proceeding's focus is on preservation of respect for the integrity of the court as an institution of justice and the enforcement of a court order, not a criminal prosecution for a statutory violation brought by the executive branch through the state attorney.[9] The State becomes involved, if at all, only at the court's invitation and then only as its agent in upholding the court's integrity and authority.[10] In that situation, the State is not acting in its independent capacity as the discretionary enforcer of state law. Cf. Comm'n on Ethics v. Sullivan, 489 So.2d 10, 12 (Fla.1986) (reasoning that inherent in the executive branch's power "is the ability to take authoritative action to fulfill the charge of faithfully enforcing the laws"); § 20.02(1), Fla. Stat. (1997) (providing "[t]he executive branch has the purpose of executing the programs and policies adopted by the Legislature and of making policy recommendations to the Legislature").
We recently reaffirmed a court's inherent contempt powers in Walker v. Bentley, 678 So.2d 1265 (Fla.1996). In Walker, we considered the legislature's 1994 amendment to section 741.30, Florida Statutes (1993), which created a cause of action for violation of and provided for the enforcement of injunctions for protection against domestic violence. Id. at 1266. The amendment mandated that a court could only enforce a violation of a domestic violence injunction through a civil contempt proceeding, thus effectively eliminating recourse to indirect criminal contempt proceedings.[11]Id. On review, we reaffirmed "that the power of a court to punish for contempt is an inherent one that exists independent of any statutory grant of authority and is essential to the execution, maintenance, and integrity of the judiciary." Id. at 1267; accord United States v. Hudson and Goodwin, 11 U.S. (7 Cranch) 32, 34, 3 L.Ed. 259 (1812) (finding that "[c]ertain implied powers [including contempt] must necessarily result to our [federal] Courts of justice from the nature of their institution").[12]
*995 Our opinion in Walker focused on the court's inherent contempt powers, not on the statutory scheme whereby the legislature purportedly fixed the exclusive sanction for violation of a domestic violence injunction.[13] While we acknowledged that the legislature could set forth or limit by statute the fines and punishment for contempt, we also found that any attempt to abolish a court's inherent power of contempt violated the separation of powers doctrine embodied in article II, section 3 of the Florida Constitution. Walker, 678 So.2d at 1267.[14]
Further, a respondent in contempt proceedings is afforded virtually all of the rights of other criminal defendants and the proceedings are usually expedited with the order to show cause itself providing for a specific trial date. It is also rare, as noted by Judge Sharp, that a respondent is arrested or jailed during the pendency of contempt proceedings. Further, these proceedings remain under the close supervision of the court that initiated them. In addition, because the proceedings are collateral to the principal matter under consideration, it is in the interest of all involved to have a prompt resolution of the contempt issue so that the main proceedings may be continued without delay. In sum, then, we find that the protections already in place to assure an expeditious resolution of contempt matters are sufficient, and such proceedings do not require the additional safeguard of the speedy trial rule.

CONCLUSION
In the final analysis, we uphold the result of the Fifth District's decision in this case. At the time Washington was arrested, our criminal rules, including the speedy trial rule, explicitly applied to criminal contempt proceedings. In addition, it appears that the State was merely attempting an end run around the speedy trial rule by seeking Washington's prosecution for criminal contempt. A court's contempt powers should not be used as a back-up for the State's failure to comply with its obligations under the speedy trial rule. On the other hand, we do not believe that the policy concerns that prompted us to enact the speedy trial rule are as compelling in traditional judicially initiated contempt proceedings. For those reasons, we hold that in the future the speedy trial rule shall not apply to criminal contempt proceedings initiated by the court.[15]
It is so ordered.
KOGAN, C.J., SHAW and HARDING, JJ., and GRIMES, Senior Justice, concur.
WELLS, J., concurs in part and dissents in part with an opinion, in which OVERTON, J., concurs.
*996 WELLS, Justice, concurring in part and dissenting in part.
I concur with the majority opinion to the extent that it holds that the speedy trial rule does not apply to indirect criminal contempt.
I dissent from the majority decision and opinion in all other respects.
I would quash the granting of the writ of prohibition.
I believe that the majority's reference to the right to a speedy trial as a fundamental right is confusing and erroneous since it is apparently referring to the right provided by the speedy trial rule. This is a procedural right created by this Court and, as such, is not what can be correctly referred to as a "fundamental right."
I do not agree with the majority's attributing to the State of an improper motive in seeking Washington's prosecution for criminal contempt. There is no record basis for that type of comment.
OVERTON, J., concurs.
NOTES
[1] The following facts are taken from the district court's opinion. Washington, 704 So.2d at 54142.
[2] Section 741.31(4)(b) provides:

(4) A person who willfully violates an injunction for protection against domestic violence, issued pursuant to S. 741.30, by:
....
(b) Going to the petitioner's residence, school, place of employment, or a specified place frequented regularly by the petitioner and any named family or household member....
[3] Fla. R.Crim. Pro. 3.191.
[4] "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed...." Amend. VI, U.S. Const.
[5] "In all criminal prosecutions the accused ... shall have the right ... to have a speedy and public trial by impartial jury in the county where the crime was committed." Art. I, § 16(a), Fla. Const.
[6] The conflict case, Drost v. Drost, 519 So.2d 698, 699-700 (Fla. 4th DCA 1988), is unremarkable in its holding that the "speedy trial rule does not apply to direct or indirect contempt proceedings," which the Fourth District offered for future guidance and was not at issue between the litigants. However, the Drost holding is noteworthy in that it was rendered in accord with Mauney v. State, the very opinion from which the Fifth District receded in this case.
[7] The correct citation is section 741.2901(1).
[8] Rule 3.840(a) provides that the judge "may issue and sign an order ... requiring the defendant to appear before the court to show cause why the defendant should not be held in contempt of court."
[9] This is not to say that the defendant is without the substantive and procedural rights attached to criminal prosecutions. A review of rule 3.840 reveals that the defendant must be served with an appropriate charging document and has the right to bail, arraignment, a hearing, counsel, and witnesses on his behalf and may also testify in his own defense. See also Gidden v. State, 613 So.2d 457, 460 (Fla.1993) (same); accord International Union, United Mine Workers of America v. Bagwell, 512 U.S. 821, 826-27, 114 S.Ct. 2552, 129 L.Ed.2d 642 (1994); Wayne R. LaFave and Austin W. Scott, Jr., Substantive Criminal Law, § 1.7, at 65-66 (1986). We have long held that criminal contempt is a crime. Aaron v. State, 284 So.2d 673 (Fla.1973). We reached that conclusion after noting that the statute which authorized imprisonment and fines for contempt, section 38.22, stated no maximum time for imprisonment. Id. at 676. In such a situation, section 775.02, Florida Statutes (1973), provided that imprisonment could not exceed one year. Since the possible maximum punishment for contempt exceeded six months imprisonment, we concluded that criminal contempt was a crime under Florida law. Id. at 676. Accordingly, we limited Rule of Criminal Procedure 3.840(a)(4), (1968), which provided that the judge determines all issues of law and fact, to situations where sentences of less than six months imprisonment would be imposed if guilt was found. Id. If the judge contemplates a greater sentence, a jury must be empaneled to determine guilt or innocence absent a waiver of that right. Id. at 676-77. In practical terms, a "judge's denial of a pre-trial motion for trial by jury will mean that he cannot impose a sentence of six months' imprisonment, or greater, should there be a finding of guilt." Id. at 676-77.
[10] Rule 3.840(d) provides that the judge may conduct the hearing himself or "may be assisted by the prosecuting attorney or by an attorney appointed for that purpose."
[11] Specifically, the amendment provided:

(8)(a) The court shall enforce, through a civil contempt proceeding, a violation of an injunction for protection which is not a criminal violation under s. 741.31. The court may enforce the respondent's compliance with the injunction by imposing a monetary assessment.
See § 741.30, Fla. Stat. (Supp.1994).
[12] The United States Supreme Court has reaffirmed the federal courts' inherent powers of contempt on numerous occasions since deciding Hudson in 1812. E.g., Chambers v. NASCO, Inc., 501 U.S. 32, 43-44, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991); Young v. United States ex rel. Vuitton et Fils S.A., 481 U.S. 787, 798, 107 S.Ct. 2124, 95 L.Ed.2d 740 (1987); Ex parte Robinson, 86 U.S. (19 Wall.) 505, 510, 22 L.Ed. 205 (1873).
[13] As the Second District observed in Walker v. Bentley, 660 So.2d 313, 318 (Fla. 2d DCA 1995) (Emphasis added):

[I]t is readily apparent that although the legislature at one point purported to vest the circuit courts with the power of indirect criminal contempt to enforce compliance with a domestic violence injunction, its attempt to do so constituted mere statutory surplusage because such courts already had the inherent constitutional authority, independent of any specific statutory grant, to invoke this power for willful disobedience of any of their orders. It follows, therefore, that the legislature had no authority at a later point to withdraw the power of indirect criminal contempt because a power the legislature cannot confer in the first instance cannot be taken away.
[14] Interestingly, the very statute that expresses the legislature's intent in criminalizing domestic violence draws this distinction. Section 741.2901(2), Florida Statutes (1997), establishes, in pertinent part, that:

It is the intent of the Legislature that domestic violence be treated as a criminal act rather than a private matter. For that reason, criminal prosecution shall be the favored method of enforcing compliance with injunctions for protection against domestic violence as both length and severity of sentence for those found to have committed the crime of domestic violence can be greater, thus providing greater protection to victims and better accountability to perpetrators. This provision shall not preclude such enforcement by the court through the use of indirect criminal contempt.
Obviously, the legislature recognized the difference between criminal prosecution by the State and enforcement by the court of its orders via indirect criminal contempt proceedings. Our opinion in Walker certainly underscored the distinction between these actions. Although both are criminal proceedings, they are separate and distinct legal mechanisms conducted by different branches of government.
[15] By this opinion we direct the criminal rules committee of The Florida Bar to implement this decision by drafting an appropriate provision for inclusion in the rules.